# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| MICHAEL BURNS, | Case No. 3:23-cv-00355-IM |
| Plaintiff, | **OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| LVNV FUNDING LLC, | |
| Defendant. | |

Nate Haberman and Michael R. Fuller, OlsenDaines, 111 SW 5th Ave, Suite 3150, Portland, OR 97204; Kelly D. Jones, 819 SE Morrison St, Suite 255, Portland, OR 97214; and William Purdy, Purdy Law Practice LLC, 2800 N Lombard St, Suite 180, Portland, OR 97217. Attorneys for Plaintiff.

Cheney E. Moss and W. Gregory Lockwood, Gordon Rees Scully Mansukhani LLP, 1300 SW 5th Ave, Suite 2000, Portland, OR 97201. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Before this Court is Defendant LVNV Funding LLC ("LVNV")'s Motion for Summary

Judgment, ECF 30. This case concerns a state court collection lawsuit that LVNV brought

against the wrong person. Plaintiff, the wrong person, successfully defended himself in the state

court action, then brought this suit against LVNV asserting violations of the Fair Debt Collection

PAGE 1 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Practices Act ("FDCPA"). Plaintiff has asserted a claim against LVNV under five separate FDCPA provisions: 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692f, and 1692f(1). Plaintiff seeks damages for his alleged harms, including injury to his reputation. Defendant LVNV moves against all alleged violations and Plaintiff's request for reputational damages.

As explained below, LVNV's Motion is GRANTED in part and DENIED in part. This Court determines that Plaintiff has standing, and LVNV has failed to show that, as a matter of law, Plaintiff is not a "consumer" under the FDCPA, there was not a "debt" under the FDCPA, or that LVNV did not violate the FDCPA. Further, LVNV has not shown that Plaintiff's claim is barred by the *Noerr-Pennington* doctrine or that reputational damages are unavailable as a matter of law. This Court therefore denies summary judgment to LVNV on most of Plaintiff's alleged FDCPA violations and on his request for reputational damages. Summary judgment is granted to LVNV, however, on Plaintiff's alleged violation of 15 U.S.C. § 1692e(5). LVNV's request that this Court strike a declaration and exhibits is denied.

## LEGAL STANDARD

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the [non-movant's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252,

255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

## BACKGROUND

LVNV is a debt buyer and debt collector. Joint Statement of Agreed & Disputed Facts ("Agreed Facts"), ECF 34 ¶ 3. LVNV does not have any employees and instead relies on its attorney agents, including Johnson Mark LLC ("JM") and its affiliated debt servicer Resurgent Capital Services LP ("Resurgent"), to collect debts that LVNV purchases on its behalf. *Id.* ¶ 4. LVNV (or Resurgent on LVNV's behalf) authorized JM to file a collection lawsuit to collect a charged-off consumer credit card debt incurred with Credit One Bank, N.A. allegedly amounting to $1,096.76. *Id.* ¶ 5–6; Collection Lawsuit Complaint, ECF 32-15. On September 7, 2022, JM filed the action in Multnomah County Circuit Court, with LVNV listed as the plaintiff and "Michael Burns" as the defendant. Collection Lawsuit Complaint, ECF 32-15, at 1–3. The collection case was initially filed in Multnomah County because the address that LVNV and Resurgent had for the plaintiff named in that case was located there. Agreed Facts, ECF 34 ¶ 7.

Plaintiff's name is Michael Burns. *Id.* ¶ 1. Plaintiff has a son named Michael Burns Jr. *Id.* Michael Burns Jr. received mail at Plaintiff's address "once or twice." Deposition of Michael Gene Burns ("M. Burns Depo."), ECF 32-1, Ex. A at 67–7. In December 2022,[1] JM mailed a document packet about the collection lawsuit against "Michael Burns" to Plaintiff's home address in Hillsboro, Oregon. Agreed Facts, ECF 34 ¶ 8; Declaration of Patricia Burns ("P. Burns Decl."), ECF 38 ¶ 2; Letter, ECF 38-1, Ex. 1 at 3. Plaintiff's wife, Patricia Burns, called

---

[1] While the Agreed Facts gives this date as December 2023, the actual year appears to be 2022 in light of the sequence of events described in the Agreed Facts.

the number for JM listed on the documents twice, once on December 27 and again on December 28. P. Burns Decl., ECF 38 ¶ 1, 4; P. Burns Phone Records, ECF 38-2, Ex. 2 at 4. Mrs. Burns spoke to a woman at JM's office and told her that they had the wrong person. Deposition of Patricia Burns ("P. Burns Depo."), ECF 36-11, Ex. 11 at 7. Upon request, Mrs. Burns gave the woman the last four digits of Plaintiff's social security number, and the woman informed Mrs. Burns that Plaintiff's social security number was not in their system. *Id.*; P. Burns Decl., ECF 38 ¶ 4. Mrs. Burns requested a resolution letter and the woman said "OK." P. Burns Decl., ECF 38 ¶ 4; P. Burns Depo., ECF 36-11, Ex. 11 at 9. Mrs. Burns never received one. P. Burns Decl., ECF 38 ¶ 4; P. Burns Depo., ECF 36-11 at 9.

On January 17, 2023, LVNV caused the collection action to be transferred to the Washington County Circuit Court. Agreed Facts, ECF 34 ¶ 9. On February 8, 2023,[2] Plaintiff was personally served with a summons and complaint at his home address. *Id.* ¶ 10. This was the first time Plaintiff became aware of the collection lawsuit. M. Burns Depo., ECF 32-1, Ex. A at 9–10. Plaintiff declares that he "d[id] not owe the debt that LVNV was trying to collect" and that he never had any sort of interactions with Credit One Bank. Declaration of Michael Burns ("M. Burns Decl."), ECF 37 ¶ 12. Plaintiff states that he is unaware whether his son, Michael Burns Jr., or another Michael Burns, owed or may have owed any debt to Credit One Bank or LVNV. *Id.* ¶¶ 13, 15. Plaintiff testified that Michael Burns Jr. never resided at Plaintiff's Hillsboro home. M. Burns Depo., ECF 36-12, Ex. 12 at 7; M. Burns Decl., ECF 37 ¶ 14.[3]

---

[2] While the Agreed Facts and Declaration of Michael Burns give this date as February 8, 2024, the actual year appears to be 2023 in light of the sequence of events described in the Agreed Facts.

[3] LVNV argues, without supporting evidence, that this lawsuit was intended for Plaintiff's son. Mot., ECF 30 at 1–2, 10.

PAGE 4 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Resurgent's phone number was listed on the complaint. Agreed Facts, ECF 34 ¶ 11. That

same day, Plaintiff called Resurgent twice, once for one minute and once for 38 minutes. M.

Burns Decl., ECF 37 ¶¶ 5–6; M. Burns Phone Records, ECF 37-1, Ex. 1 at 4. Plaintiff testified

that no one at Resurgent would speak with him about the lawsuit. M. Burns Depo., ECF 36-12,

Ex. 12 at 13. Plaintiff states that he gave up and decided to try to find an attorney to assist him

with the collections lawsuit. M. Burns Decl., ECF 37 ¶ 6. Plaintiff states that he considered just

paying the debt "because of the difficulty [of] dealing with LVNV and finding a lawyer." *Id.* ¶ 8.

On February 20, 2023, Plaintiff sent an email to LVNV's lawyers that stated: "You filed

your lawsuit against the wrong person. Please dismiss this lawsuit against me as soon as

possible." *Id.* ¶ 9; Email, ECF 37-2, Ex. 2. Plaintiff attests that he eventually retained an attorney

to defend him in the collection lawsuit. M. Burns Decl., ECF 37 ¶ 16.

On March 12, 2023, Plaintiff filed the instant action against LVNV for violations of the

FDCPA. Complaint ("Compl."), ECF 1. Plaintiff alleges that LVNV's collection lawsuit violated

15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692f, and 1692f(1). *Id.* at 4.

JM filed a notice of dismissal without prejudice of the collection lawsuit approximately

two months later. Agreed Facts, ECF 34 ¶ 12; Notice of Dismissal, ECF 32-8, Ex. H. The

Washington County Circuit Court subsequently entered an order dismissing the suit without

prejudice. Agreed Facts, ECF 34 ¶ 13; Notice of Entry of Judgment, ECF 32-9, Ex. I. Plaintiff

then filed a request for hearing in Washington County Circuit Court, seeking $19,737 in attorney

fees and enhancements. Agreed Facts, ECF 34 ¶ 14; Request for Hearing, ECF 32-10 at 3.

LVNV did not oppose Plaintiff's request. Agreed Facts, ECF 34 ¶ 15; Order on Statement for

Attorney Fees, ECF 32-11, Ex. K at 1. The Washington County Circuit Court granted Plaintiff's

fee request and entered judgment against LVNV. Agreed Facts, ECF 34 ¶ 15; Order on

Statement for Attorney Fees, ECF 32-11 at 1. LVNV satisfied the judgment. Satisfaction of

Judgment, ECF 32-12, Ex. L at 3.

> Plaintiff attests that:

>> Immediately after being personally served with the collection
>> lawsuit . . . I began to suffer anxiety, stress, and emotional distress
>> that caused me to lose hair and lose sleep and worsened my already
>> existing health conditions. Because of my lost sleep, I had
>> difficulty focusing on things and on work. I also missed work so
>> that I could spend time fighting the baseless state court collection
>> lawsuit and debt collections.

M. Burns Decl., ECF 37 ¶ 11. Plaintiff testified that he spent about five hours trying to get an

attorney. M. Burns Depo., ECF 36-12, Ex. 12 at 10. Plaintiff also states that, once he had an

attorney, LVNV did not dismiss its lawsuit "for over a month, causing me additional stress and

anxiety during that entire time." M. Burns Decl., ECF 37 ¶ 16. Finally, Plaintiff declares:

>> My reputation as an honest man who pays his debts is very
>> important to me, and by filing its lawsuit LVNV publicly told the
>> Oregon State Court and others who may look that a Michael Burns
>> who lived at my address in Washington County (which is only me)
>> owed LVNV money on an unpaid credit card debt. This caused me
>> distress, embarrassment, and humiliation because I was concerned
>> that people would think I was dishonest or didn't pay my debts.

*Id.* ¶ 18. Mrs. Burns attests that she witnessed Plaintiff "experiencing distress, anxiety, and stress

related to the [collection] lawsuit that manifested as sleeplessness. He would also be irritable or

would become quiet, indicating to me that something was wrong. When I would ask him what

was wrong, he told me that it was the LVNV debt collection lawsuit that was bothering him." P.

Burns Decl., ECF 38 ¶ 6; P. Burns Depo., ECF 36-11, Ex. 11 at 12–13.

## DISCUSSION

LVNV seeks summary judgment on all of Plaintiff's alleged FDCPA violations. This

Court first denies LVNV's request to strike evidence introduced by Plaintiff in response to

LVNV's motion. This Court then assesses standing; concluding Plaintiff has standing. Then, this

Court turns to the merits. On the merits, this Court concludes that, based on the undisputed facts,

LVNV is not entitled to summary judgment on four of Plaintiff's five alleged FDCPA

violations—15 U.S.C. §§ 1692e,1692e(2), 1692f, and 1692f(1)—or with respect to Plaintiff's

claim for reputational damages. Further, LVNV is not entitled to *Noerr-Pennington* immunity.

Summary judgment is, however, granted to LVNV on Plaintiff's alleged violation of 15 U.S.C.

§ 1692e(5).

## A.  Motion to Strike

LVNV asks this Court to "str[ike] from consideration" Plaintiff's Declaration of Nate

Haberman and the accompanying exhibits filed under seal, ECF 36, because "these documents

were not served." Reply, ECF 41 at 2–3. As authority, LVNV cites to Federal Rule of Civil

Procedure 56, Local Rule 5, and Local Rule 56.[4] None of these rules give this Court the authority

to strike these documents for inadequate service. *See Rojas v. Target Corp.*, No. SACV 14-1229,

2016 WL 11744739, at *3 (C.D. Cal. Apr. 5, 2016) ("There might be inherent authority for the

Court to strike the material [defendant] wants stricken. There might not be. There might be

reasons to strike that material. There might not be. But the Court definitely can't grant

[defendant]'s Motion to Strike given [defendant]'s showing."). By not citing clear authority, or

even a specific subsection to these rules, LVNV failed to provide explicit grounds for its motion

to strike, and thus "denied [Plaintiff] an opportunity to respond" effectively. *Id.*

---

[4] LVNV does not ask this Court to strike a pleading under Rule 12(f). Nor does LVNV object on evidentiary grounds. Fed. R Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *see also* Local Rule 56-1(b) ("Rather than filing a motion to strike, a party must assert any evidentiary objections in its response or reply memorandum."). An asserted failure to serve is not an argument that the evidence cannot be presented in admissible form at trial. Finally, LVNV does not ask this Court to preclude evidence under Federal Rule of Civil Procedure 37 for failure to disclose required information in discovery or to amend a prior discovery response as required by Rule 26(e)(2). Fed. R. Civ. P. 37(c)(1).

LVNV also cites *Progressive Solutions, Inc. v. Stanley*, No. 16-CV-04805, 2018 WL 1449395 (N.D. Cal. Feb. 14, 2018) as "striking late served exhibits." Reply, ECF 41 at 3. LVNV's assertion misstates the holding. In that case, the court struck a declaration for untimely service—without stating its authority to do so—that was created in connection with plaintiff's opposition to the summary judgment motion, but declined to strike other late-served documents because defendant already had most of them. *Progressive Sols.*, 2018 WL 1449395, at *1. LVNV does not assert that it did not already have these documents. Plaintiff states that these documents "were already long ago available to [LVNV] or otherwise in [LVNV]'s possession," and maintains that LVNV "never requested additional copies of the documents from [P]laintiff or that the documents be unsealed." Surreply, ECF 42 at 2–3.

LVNV does not explain how Plaintiff's actions amount to inadequate service under this District's Local Rules and the Protective Order, ECF 17. Plaintiff argues that these documents "were filed under seal to comply with the protective order" as LVNV had designated "several of the exhibits filed with that declaration" as confidential. Surreply, ECF 42 at 2. The Protective Order requires that documents deemed confidential "shall be filed under seal," and does not discuss service. ECF 17 ¶ 4. LVNV does not provide authority for its view of how sealed documents should be served. The Court denies LVNV's motion to strike.

## B.  Standing

LVNV argues that Plaintiff lacks standing because he fails to prove an injury in fact. *See* Mot., ECF 30 at 6–12. This Court holds that Plaintiff has standing. To establish Article III standing, a plaintiff "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted) (cleaned up); *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019). As the party invoking federal

jurisdiction, the plaintiff has the burden of establishing standing. *Lujan*, 504 U.S. at 561. At the summary judgment stage, the plaintiff may not rely upon "mere allegations," but rather "must set forth by affidavit or other evidence specific facts" that support a finding of standing. *Id.* (internal quotation marks omitted). The court must presume these facts to be true at this stage. *Id.*

Here, Plaintiff alleges statutory violations. Compl., ECF 1 ¶ 7. "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Plaintiff alleges the resulting harm as "damage to reputation, emotional distress, and interference with [P]laintiff's normal and usual activities," Compl., ECF 1 ¶ 5, all intangible injuries.[5] The Supreme Court has articulated the test for when an intangible injury caused by a statutory violation is sufficiently concrete as "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," though not necessarily an "exact duplicate." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (quoting *Spokeo*, 578 U.S. at 341). Specifically, for an intangible injury to be concrete, the plaintiff must show that "(1) Congress created a statutory cause of action for the injury[;] and (2) the injury has a close historical or common-law analog." *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1118 (9th Cir. 2022) (citing *TransUnion*, 141 S. Ct. at 2204–07).[6]

---

[5] This Court also notes that "the time" expended "to defend against unjustified legal action" caused by FDCPA violations may be considered a tangible harm. *Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 463 (8th Cir. 2022).

[6] On the one hand, LVNV asks this Court to apply the Ninth Circuit's pre-*TransUnion* test, which asked "(1) whether the statutory provisions at issue were established to protect a plaintiff's concrete interests (as opposed to purely procedural rights), and if so (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." Mot., ECF 30 at 7 (quoting *Patel*, 932 F.3d at 1270–71). Step two of this test "appears to be in serious tension" with *TransUnion*'s holding that a material risk of harm from a statutory violation is insufficient. *Fleming v. ProVest Cal. LLC*, No. 21-CV-04462, 2021 WL 6063565, at *5 (N.D. Cal. Dec. 22, 2021) (Koh, J.); *see TransUnion*, 594 U.S. at 437

### a. Statutory Cause of Action

Plaintiff has sufficiently shown a statutory cause of action. "One of the purposes of the FDCPA was to eliminate the recurring problem of debt collectors dunning the wrong person." *Owens v. Howe*, No. 04-CV-152, 2004 WL 6070565, at \*9 (N.D. Ind. Nov. 8, 2004) (citing congressional history); *see also* H.R. Rep. No. 95-131, at 8 (1978) ("This bill also protects people who do not owe money at all. In the collector's zeal, collection efforts are often aimed at the wrong person either because of mistaken identity or mistaken facts."). To this end, the Act generally prohibits debt collectors from making false and misleading statements, 15 U.S.C. § 1692e, or using "unfair or unconscionable means," such as claiming unauthorized fees, to collect a debt. 15 U.S.C. § 1692f; *Owens*, 2004 WL 6070565, at \*9. Further, "[w]ith § 1692f(1), Congress identified a harm—being subjected to attempts to collect debts not owed." *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691 (8th Cir. 2017). Congress has thus created a statutory cause of action for when a debt collector sues the wrong person.

For the same reasons, this Court concludes that even under the pre-*TransUnion* standing framework, the FDCPA provisions at issue were established to protect Plaintiff's concrete interests. These provisions "do[] not describe a procedure that [a person] must follow," but rather generally protect a consumer's concrete interest in not being sued for a debt not owed. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017); *Nayab v. Cap. One Bank (USA),*

---

(holding "plaintiffs' argument for standing for their damages claims based on an asserted risk of future harm is unavailing" and clarifying that *Spokeo* "did not hold that the mere risk of future harm, without more," is sufficient for standing purposes). On the other hand, LVNV criticizes Plaintiff for "attempt[ing] to rely on outdated [standing] law" from before *TransUnion*. Reply, ECF 41 at 10. Nevertheless, in this case, these tests are not irreconcilable, and the result is the same under both, as discussed in this opinion. This Court concludes that pre-*TransUnion* standing case law interpreting the Ninth Circuit's standing test is relevant to the extent that it is not "clearly irreconcilable" with *TransUnion*. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

*N.A.*, 942 F.3d 480, 490 (9th Cir. 2019). This understanding is confirmed by "[h]istorical practice" at common law, *cf. Eichenberger*, 876 F.3d at 893, discussed below. As to step two of the Ninth Circuit test, the alleged FDCPA violations harm this interest. Plaintiff was subjected to a collection lawsuit for a debt he did not owe, and taking his evidence as true, he suffered emotional distress as a result, an actual harm.[7] *Cf. Ward v. LVNV Funding, LLC*, No. 3:23-CV-00362-AN, 2023 WL 7183329, at *3 (D. Or. Nov. 1, 2023) (holding that there was no actual harm in part because there was no evidence of emotional distress).

### b. Common-Law Analog

Turning to step two of the *TransUnion* analysis, LVNV argues that the closest common-law analogue "for [P]laintiff's *claim[]*" is fraud. Mot., ECF 30 at 7 (emphasis added). The proper inquiry, however, is the closest analogue for Plaintiff's *injury. Wakefield*, 51 F.4th at 1118; *see also Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 164 n.6 (3d Cir. 2023) (Rendell, J., concurring in part and dissenting in part) (noting that other judges "have suggested that torts other than fraudulent misrepresentation bear a close relationship to the interest protected by § 1692e"). This Court analyzes each alleged injury in turn.

### i. Reputational Damage

"[R]eputational harms" resulting from a statutory violation are sufficiently concrete to confer standing. *TransUnion*, 141 S. Ct. at 2204. While LVNV argues that Plaintiff has failed to show any reputational harm caused by LVNV, Mot., ECF 30 at 11–12, this Court disagrees. Plaintiff testified that his reputation is important to him and that, after the collection lawsuit, the

---

[7] "[B]eing subject to attempts to collect a debt not owed" might even be "an intangible harm sufficient to confer Article III standing" on its own, absent a showing of emotional distress, assuming "the underlying facts bear a sufficiently close relationship to a common-law unjustifiable-litigation tort." *Delgado v. Midland Credit Mgmt., Inc.*, No. 23-CV-2128, 2024 WL 1255490, at *5 (D. Minn. Mar. 25, 2024).

PAGE 11 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

press contacted him for an interview, he was interviewed on the news about the collection

lawsuit, some of his friends called him, and one person sent him a LinkedIn message. M. Burns

Depo., ECF 32-1, Ex. A at 30–31, 34, 36–37. A reasonable jury could find that the publicly filed

collections lawsuit caused Plaintiff to receive attention from the press and negatively impacted

Plaintiff's reputation in the community and amongst his friends and professional network.

Accordingly, summary judgment is denied on Plaintiff's request for reputational damages.

### ii. Emotional Distress

Even if Plaintiff had not provided evidence of his reputational damages, he would still

have standing based on his asserted emotional distress damages. Plaintiff argues that the harm at

issue has a close common law analog to wrongful use of civil proceedings,[8] malicious

---

[8] The Restatement (Second) of Torts defines wrongful use of civil proceedings:
> One who takes an active part in the initiation, continuation or
> procurement of civil proceedings against another is subject to
> liability to the other for wrongful civil proceedings if (a) he acts
> without probable cause, and primarily for a purpose other than that
> of securing the proper adjudication of the claim in which the
> proceedings are based, and (b) except when they are ex parte, the
> proceedings have terminated in favor of the person against whom
> they are brought.

Restatement (Second) of Torts § 674 (Am. L. Inst. 1977). Emotional distress damages are
recoverable. *Id.* § 681(e).

prosecution,[9] invasion of privacy,[10] and intentional infliction of emotional distress.[11] Response, ECF 35 at 68–69. This Court agrees with Plaintiff that the harm at issue here—being served with and having to defend a lawsuit to collect a debt not owed and the accompanying emotional distress—bears a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts. As the Eighth Circuit held post-*Spokeo*, the "harm of being subjected to baseless legal claims, creating the risk of mental distress, provides the basis for both § 1692f(1) claims and the common-law unjustifiable-litigation torts," including "malicious prosecution, wrongful use of civil proceedings, and abuse of process." *Demarais*, 869 F.3d at 692 (holding that plaintiff suffered concrete injuries when he was served with discovery requests on an extinguished debt, falsely told that he had to respond to them, and was told defendant was attempting to collect a debt).

---

[9] This Court treats malicious prosecution as synonymous with abuse of process. *Lunsford v. Am. Guarantee & Liab. Ins. Co.*, 18 F.3d 653, 655 (9th Cir. 1994) ("[T]he distinction between malicious prosecution and abuse of process is at best unclear." (internal quotation marks omitted)). "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." Restatement (Second) of Torts § 682. The injury "is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." *Id.* § 682 cmt. a.

[10] The Restatement (Second) of Torts defines invasion of privacy:
> (1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other. (2) The right of privacy is invaded by (a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or (b) appropriation of the other's name or likeness, as stated in § 652C; or (c) unreasonable publicity given to the other's private life, as stated in § 652D; or (d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E.

§ 652A. Emotional distress damages are recoverable. *Id.* § 652H(b).

[11] "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm . . . ." *Id.* § 46(1).

In *TransUnion*, the Supreme Court left the door open to the possibility that emotional distress may constitute an injury in fact: "[A] plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm. We take no position on whether or how such an emotional or psychological harm could suffice for Article III purposes—for example, by analogy to the tort of intentional infliction of emotional distress." 141 S. Ct. at 2211 n.7.

Intentional infliction of emotional distress (and negligent infliction of emotional distress) are common law torts "for intangible harms that are traditionally recognized as a basis for lawsuits in American courts." *Daniels v. Home Depot USA Inc.*, No. 23-CV-415, 2024 WL 1072733, at *2 (D. Conn. Mar. 12, 2024) (citing Restatement (Second) of Torts § 46 (Am. L. Inst. 1965); and *Gerber v. Herskovitz*, 14 F.4th 500, 506 (6th Cir. 2021)). While these torts require some level of intent, "the focus of this [standing] inquiry is on the type of harm, not intent." *Rendon v. Cherry Creek Mortg., LLC*, No. 22-CV-01194, 2022 WL 17824003, at *4 (S.D. Cal. Dec. 20, 2022) (citing *TransUnion*, 141 S. Ct. at 2204). And the "level of harm" need not be actionable under a similar common law cause of action; it is sufficient that the type of harm the plaintiff has suffered "is similar in kind to a type of harm that the common law has recognized as actionable." *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 822 (5th Cir. 2022); *see also Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) (explaining that courts "are meant to look for a 'close relationship' in kind, not degree" in analogizing to harms recognized at common law). Here, the emotional harm is similar in kind to the harm recognized in tort claims for intentional infliction of emotional distress. Therefore, the type of harm that Plaintiff has alleged and provided evidence of, drawing

reasonable inferences and weighing the evidence in Plaintiff's favor, is similar in kind to a type

of harm recognized as actionable at common law. Plaintiff has established Article III standing.

This Court joins other courts that, after *TransUnion*, have found that, in at least some

cases, emotional distress confers Article III standing under the FDCPA. *Thome v. Sayer L. Grp.,*

*P.C.*, 567 F. Supp. 3d 1057, 1077 (N.D. Iowa 2021) (holding emotional distress is a concrete

harm sufficient to establish standing under the FDCPA); *Mayfield v. LTD Fin. Servs., L.P.*,

No. 20-CV-01966, 2021 WL 4481089, at *4 (S.D. Tex. Sept. 30, 2021) (same); *Toste v. Beach*

*Club at Fontainebleau Park Condo. Ass'n, Inc.*, No. 21-14348, 2022 WL 4091738, at *4 (11th

Cir. Sept. 7, 2022) (same).

Because Plaintiff has standing, this Court need not consider whether "interference with

normal and usual activities" is a concrete injury.

## C.  FDCPA Claim

LVNV argues that Plaintiff cannot prove an FDCPA claim and therefore LVNV is

entitled to summary judgment. *See* Mot., ECF 30 at 14–15. For the reasons below, this Court

disagrees. The purpose of the FDCPA is to protect consumers from abusive, deceptive, and

unfair debt collection practices. *See* 15 U.S.C. § 1692. To prevail on a FDCPA claim, the

Plaintiff must show that (1) the plaintiff is a "consumer" within the meaning of the statute;

(2) there is a "debt" within the meaning of the statute; (3) the defendant is a "debt collector"

within the meaning of the statute; and (4) the defendant committed some act or omission in

violation of the FDCPA. *McCurdy v. Pro. Credit Serv.*, No. 6:15-CV-01498-AA, 2016 WL

5853721, at *3 (D. Or. Oct. 3, 2016); *McGuire v. Credit Coll. Serv. Com.*, No. 16-00170, 2016

WL 3676108, at *2 (D. Haw. Jul. 7, 2016). The Parties agree that LVNV is a "debt collector."

Agreed Facts, ECF 34 ¶ 3.

### 1.  Plaintiff is a "Consumer" under the FDCPA

LVNV argues that Plaintiff is not a "consumer" under the FDCPA because Plaintiff was not the intended target of the collection lawsuit. Mot., ECF 30 at 14–15. LVNV does not provide any legal authority to support its position. "Consumer" in the FDCPA context means "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The question here is whether Plaintiff has provided evidence that he was "allegedly obligated" to pay a debt. This Court concludes that he has.

This Court joins the weight of authority in holding that "individuals who are mistakenly dunned by debt collectors" are consumers under § 1692a(3). *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1002 (8th Cir. 2011). "[A] mistaken allegation is an allegation nonetheless." *Id.* LVNV concedes that it subjected Plaintiff to a lawsuit demanding payment of a debt that he did not owe. "The fact that the debt actually belonged to someone else does not strip [p]laintiff of a cause of action under the FDCPA." *Gonzalez v. Law Firm of Sam Chandra, APC*, No. 13-CV-0097, 2013 WL 4758944, at *3 (E.D. Wash. Sept. 4, 2013); *see Davis v. Midland Funding, LLC*, 41 F. Supp. 3d 919, 924 (E.D. Cal. 2014) ("[T]he FDCPA encompasses claims brought by individuals subjected to collection efforts for obligations they are falsely alleged to have owed."); *Hedayati v. Perry L. Firm*, No. SA CV 16-0846, 2017 WL 4864491, at *5 (C.D. Cal. Oct. 27, 2017) ("This Court . . . reads the term 'consumer' to encompass persons from whom debt collectors mistakenly attempt to collect money, because through such collection efforts the debt collector effectively 'alleges' that the individual is 'obligated' to pay the debt."); *Terry v. Portfolio Recovery Assocs., LLC*, No. 20-CV-00090, 2020 WL 8172989, at *4 (D. Alaska Oct. 16, 2020) ("[A] person who does not actually owe a debt—including a person who has been mistakenly identified as owing a debt—falls within the FDCPA's protections.").

### 2. Plaintiff has Shown a "Debt" under the FDCPA

LVNV argues that Plaintiff cannot prove a "debt" within the meaning of the FDCPA because he cannot show that the debt was "incurred for personal, family, or household purposes." *See* Mot., ECF 30 at 15. Only personal loans qualify as a "debt" under the FDCPA. *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992). As Plaintiff points out, LVNV agreed that the debt here is "as defined by 15 U.S.C. § 1692a(5)." Agreed Facts, ECF 34 ¶ 5. LVNV did not respond to this argument. Regardless, this Court concludes that Plaintiff has shown a "debt." "It would be absurd to hold that a plaintiff who is subject to debt collection efforts for an obligation that he does not owe is ineligible for the FDCPA's protections simply because he cannot characterize the nature of that obligation." *Davis*, 41 F. Supp. 3d at 925.

### 3. Plaintiff has Provided Sufficient Evidence of Four FDCPA Violations

There is no dispute that LVNV brought a collection lawsuit against Plaintiff, suggesting that Plaintiff owed the debt, and that Plaintiff did not owe that debt. The only question regarding LVNV's alleged violations of §§ 1692e, 1692e(2), 1692e(5), 1692f, and 1692f(1) is whether serving someone with a collection lawsuit and causing that person to defend such lawsuit for a debt they do not owe may deceive or mislead an unsophisticated debtor. This is a question of law. *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997).

The FDCPA is a "remedial statute" that "should be construed liberally in favor of the consumer." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1118 (9th Cir. 2014) (citation omitted). Whether LVNV violated the FDCPA by subjecting a consumer to a debt collection lawsuit for a debt he did not owe is governed by the objective "least sophisticated debtor"

standard: is the least sophisticated debtor likely to be misled by a communication?[12] *Id.* at 1119; *Donohue*, 592 F.3d at 1030. The least sophisticated debtor is "of below average sophistication or intelligence," "uninformed," or "naïve," but his interpretation of the communication may not be "bizarre," "idiosyncratic," or "peculiar." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011). In addition, the FDCPA "is a strict liability statute" and the plaintiff generally need not provide proof of intentional violation. *Id.* at 1061.

LVNV argues that "unintentional service on the wrong person is not an FDCPA violation." Mot., ECF 30 at 12–14. This Court addresses each alleged FDCPA violation in turn.

### a. Sections 1692e and 1692e(2)(A)

Section 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Despite LVNV's emphasis that its service was unintentional, § 1692e does not contain a knowledge or intent requirement. *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006). Section 1692e(2) specifically prohibits "[t]he false representation of—(A) the character, amount, or legal status of any debt . . . ." This Court determines that subjecting Plaintiff to a collection lawsuit for a debt he did not owe may violate §§ 1692e and 1692e(2)(A): LVNV may have falsely represented to Plaintiff the character or status of the debt by serving him with the lawsuit and requiring him to defend himself. *See Heathman v. Portfolio Recovery Assocs., LLC*, No. 12-CV-201, 2013 WL 755674, at *3 (S.D. Cal. Feb. 27, 2013) (finding liability under § 1692e where defendant filed a collections complaint against plaintiff "alleging a debt not in fact owed"); *Owens*, 2004 WL 6070565, at *11 ("[M]erely dunning a person who is not legally

---

[12] "[A] complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of §§ 1692e and 1692f." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1031–32 (9th Cir. 2010).

PAGE 18 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

obligated to pay the debt makes the debt collector liable under that statute as a matter of law because it is, *ipso facto*, a false representation about the status or character of the debt."); *Christopher v. RJM Acquisitions LLC*, No. CV-13-02274, 2015 WL 437541, at *4 (D. Ariz. Feb. 3, 2015) (holding that "sending a collection letter to someone who does not owe a debt" violates § 1692e(2)(A)).

LVNV's case law is unavailing. First, LVNV substantially misquotes and re-writes *Hedayati*, 2017 WL 4864491.[13] LVNV omits crucial language, changes other language, and adds the second sentence—unclear from where. In *Hedayati*, the court concluded after a bench trial that the plaintiff had not established a § 1692e violation because the documents plaintiff received, while bearing his name, listed another address. *Id.* Here, the complaint and summons

---

[13] Without brackets or notation, LVNV quotes *Hedayati* as finding no violation because:

> Even the least sophisticated debtor understands that, if he receives debt collection notices that list an account he doesn't recognize and a name similar to his own, that the debt collector likely has the wrong individual. Here, the Plaintiff had immediate, actual knowledge that the debt was not his. In fact, that is exactly what happened in this case—as soon as Plaintiff saw the debt listed on documents, he knew that he did not owe the debt and that Defendant had served the wrong individual.

Mot., ECF 30 at 13 (purportedly quoting *Hedayati*, 2017 Wl 4864491, at *7). The case, with LVNV's omissions in bold and its additions in strikethrough, states:

> Even the least sophisticated debtor **knows his own address and can** understand~~s~~ that, if he receives debt collection notices that list an **address** ~~account~~ he doesn't recognize and a name similar to his own, that the debt collector likely has the wrong individual. ~~Here, the Plaintiff had immediate, actual knowledge that the debt was not his.~~ In fact, that is exactly what happened in this case—as soon as Plaintiff saw the **Corkwood Property** ~~debt~~ listed on documents, he knew that he did not owe the debt and that Defendant **was targeting** ~~had served~~ the wrong individual.

*Hedayati*, 2017 WL 4864491, at *7 (emphasis added). LVNV is admonished to not to attempt to mislead the Court in the future.

listed both Plaintiff's name and actual address. Even if Plaintiff knew that the debt was not his,[14] the least sophisticated debtor might not. The Court cannot conclude that LVNV's conduct was not, as a matter of law, false, deceptive, or misleading.

LVNV also cites *Bleich v. Revenue Maximization Group, Inc.*, 233 F. Supp. 2d 496 (E.D.N.Y. 2002). There, the court granted summary judgment on plaintiff's alleged § 1692e violation that was "based only upon the assertion that the debt sought to be collected [in a collection letter] is not valid." *Id.* at 501. The court emphasized that the letter "contained a proper validation notice" but plaintiff filed suit instead of making a request for debt verification. *Id.* at 500. Based on these facts, the court reasoned:

> [A] consumer alleging that a debt referenced in a collection letter is not valid, is required to follow the clear and orderly procedure set forth in the FDCPA. Such a consumer may not institute an immediate lawsuit alleging that the letter violates the FDCPA. To allow such lawsuits would discourage use of the detailed statutory procedure. Instead, individuals would be encouraged to resort to litigation (and the prospect of an attorney's fee award) instead of being encouraged to communicate directly with the debt collector to expeditiously resolve their claim.

*Id.* at 501. This logic does not apply here. LVNV did not erroneously send Plaintiff a collection letter, but rather subjected Plaintiff to a collection lawsuit for a debt he did not owe. There is no equivalent procedure under the FDCPA to challenge an erroneously filed lawsuit.[15]

---

[14] This is a disputed fact. Plaintiff attests that he understood the lawsuit to be against him since it was served on him at his home. M. Burns Decl., ECF 37 ¶ 3. But Plaintiff also testified that he knew "this is wrong" and "this isn't me," M. Burns Depo., ECF 36-12, Ex. 12 at 8, and the Declaration of Service states: "[Plaintiff] would not accept paperwork, without seeing them he insisted that there must be another person of the same name." ECF 32-3, Ex. C.

[15] This Court is similarly not persuaded by LVNV's citation to *Reed v. AFNI, Inc.*, No. 2:09-CV-459, 2011 WL 112430 (D. Utah Jan. 13, 2011). The court held that there was no § 1692e(2) violation where defendant had sent plaintiff two letters to collect a debt that was not plaintiff's due to identity theft, but defendant "did not file a lawsuit against Plaintiff to collect the debt." *Id.* at *1–2.

LVNV's reliance on *Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080 (E.D. Cal. 2013), is also misplaced. There, the court dismissed part of plaintiff's § 1692d claim under the motion to dismiss standard because an erroneous lawsuit did not "harass, oppress, or abuse plaintiff." *Id.* at 1095. Here, Plaintiff did not allege a violation of § 1692d, so he need not demonstrate harassment, oppression, or abuse. LVNV is not entitled to summary judgment on its alleged violations of §§ 1692e and 1692e(2)(A).

### b.  Section 1692e(5)

LVNV's conduct, however, does not violate § 1692e(5) as a matter of law. Plaintiff offers no argument or authority on this issue. Section 1692e(5) specifically prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." The complaint and lawsuit were not a threat to sue Plaintiff, but rather a lawsuit that was actually initiated. *See Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996). Further, Plaintiff has not established that the collection lawsuit could not have been legally taken, just that it was against the wrong person. Summary judgment is therefore granted to LVNV on its alleged § 1692e(5) violation.

### c.  Sections 1692f and 1692f(1)

Section 1692f prohibits the use by any debt collector of "unfair or unconscionable means to collect or attempt to collect any debt." LVNV can be subject to liability under § 1692f for attempting to collect a debt from Plaintiff that he did not owe. *Heathman*, 2013 WL 755674, at *4 (finding § 1692f liability where defendant attempted to collect a debt from plaintiff that was not owed). LVNV may also be liable under § 1692f(1). "The collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law" is a violation of § 1692f(1). The "collection" of a debt includes attempts to collect. *Mease v. DCS Fin. Inc.*, No. 24-5257, 2024 WL 3511279, at *8 (W.D. Wash. July 23, 2024). Here, the

PAGE 21 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

collection lawsuit was an attempt to collect from Plaintiff a debt for which there was no

agreement by Plaintiff.

\*    \*    \*    \*

Accordingly, under the least sophisticated debtor standard, LVNV's conduct may have

violated §§ 1692e, 1692e(2)(A), 1692f, and 1692f(1),[16] but not § 1692e(5), by subjecting

Plaintiff to a debt collection lawsuit for a debt not owed.

### D. *Noerr-Pennington* Immunity

LVNV argues that Plaintiff's FDCPA claim is barred by the *Noerr-Pennington* doctrine,

but cites no case applying this immunity in FDCPA context. Mot., ECF 30 at 15–16.

*Noerr-Pennington* immunity "derives from the First Amendment's guarantee of 'the right of the

people . . . to petition the Government for a redress of grievances.'" *Sosa v. DIRECTV, Inc.*, 437

F.3d 923, 929 (9th Cir. 2006) (quoting U.S. Const. amend. I). "Under the *Noerr-Pennington*

doctrine, those who petition any department of the government for redress are generally immune

from statutory liability for their petitioning conduct," *id.*, including "liability for engaging in

litigation." *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1047 (9th Cir. 2015). *Noerr-*

*Pennington* immunity arose in the antitrust field and the Supreme Court has extended it to other

contexts, *Sosa*, 437 F.3d at 929–31, but LVNV has presented no authority to support applying

this immunity to the FDCPA. *See* Mot., ECF 30 at 15–16.

Indeed, other courts that have considered the question have declined to adopt this

argument. *See Kendricks v. Collect Access, LLC*, No. 19-CV-01134, 2021 WL 256802, at \*4

(C.D. Cal. Jan. 26, 2021) ("FDCPA claims are not barred by the *Noerr-Pennington* doctrine."

(emphasis omitted)); *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 616 (6th Cir. 2009)

---

[16] The same conduct can serve as the basis for multiple FDCPA violations. *Clark*, 460
F.3d at 1177.

("[T]he First Amendment does not shield lawyers engaged in litigation from FDCPA liability."); *Gerber v. Citigroup, Inc.*, No. CIV S-07-0785, 2009 WL 248094, at *4 (E.D. Cal. Jan. 29, 2009), *report & recommendation adopted*, No. 07-CV-0785, 2009 WL 2058576 (E.D. Cal. July 14, 2009) ("To find defendants immunized by the Noerr-Pennington doctrine would eviscerate the [FDCPA]."). The Supreme Court has held that the term "debt collector" under the FDCPA includes "lawyers engaged in litigation." *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995). To hold that the *Noerr-Pennington* doctrine immunizes litigation-related activities "would suggest that the FDCPA claims in *Heintz* ran afoul of the First Amendment. The court declines to make such a suggestion." *Sial v. Unifund CCR Partners*, No. 08 CV 0905, 2008 WL 4079281, at *4 (S.D. Cal. Aug. 28, 2008). Summary judgment is not warranted on *Noerr-Pennington* grounds.

## CONCLUSION

LVNV's Motion for Summary Judgment, ECF 30, is GRANTED in part and DENIED in part. Summary judgment is granted on Plaintiff's claim under 15 U.S.C. § 1692e(5) and is otherwise denied.

**IT IS SO ORDERED.**

DATED this 18th day of October, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge